**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**TERRI M.,**

     **Plaintiff,**

**vs.**                                     **CIVIL ACTION NO. 3:23-CV-00769**

**MARTIN J. O'MALLEY,**
**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered December 4, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 5, 6)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 5), **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 6); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff protectively filed her application for DIB on January 9, 2020 alleging disability beginning September 16, 2019[1] due to her heart, "AFIB", back problems, degenerative disc disease, hearing loss, sleep apnea, and her thyroid. (Tr. at 17, 222) Her claim was initially denied on January 15, 2021 and upon reconsideration on April 4, 2022 (Tr. at 17, 58-76, 78-84). Thereafter, the Plaintiff filed a written request for hearing on May 27, 2022 (Tr. at 102-103).

An administrative hearing was held on January 26, 2023 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ") (Tr. at 35-56). On April 12, 2023, the ALJ entered an unfavorable decision (Tr. at 14-34). On October 2, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus, the ALJ's decision became the final decision of the Acting Commissioner (Tr. at 1-6).

On December 1, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 4) Subsequently, the Plaintiff filed a Brief in support of her complaint (ECF No. 5); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 6), to which the Plaintiff filed her Reply Brief (ECF No. 7). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 63 years old as of the alleged onset date, and therefore considered a

---

[1] The Plaintiff indicated that she stopped working due to her conditions and also because she became "[e]ligible for retirement." (Tr. at 223)

"person closely approaching retirement age" throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 218) She completed two years of college and had worked in state government performing administrative services for nearly 34 years. (Tr. at 223, 224)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information;

interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements ("DLI") through June 30, 2022. (Tr. at 19, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of September 16, 2019 through her DLI. (Id., Finding No. 2) Under the second inquiry, the ALJ found that through her DLI, the Plaintiff had the following severe impairments: history of A-Fib; status post loop recorder implantation; spondylosis; osteoarthritis; radiculopathy; bilateral hearing loss; obesity; and chronic pain syndrome. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 through her DLI. (Tr. at 21-22, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work through her DLI except

> she can stand and/or walk for 4 hours in an 8-hour day and can sit for 6 hours in an 8-hour day. She can occasionally climb ramps and stairs; but can never climb ladders, ropes, or scaffolds. She is capable of frequently balancing; and occasionally stooping, kneeling, crouching, and crawling. She is capable of tolerating occasional exposure to vibration and workplace hazards such as moving machinery or unprotected heights. In addition, she should avoid exposure to loud noise work environment as that term would be used and defined in the Selected Characteristics of Occupations (SCO).

(Tr. at 23, Finding No. 5)

At step four, the ALJ found the Plaintiff was capable of performing her past relevant work as a benefits manager through her DLI. (Tr. at 26, Finding No. 6) Finally, the ALJ determined the

Plaintiff had not been under a disability since September 19, 2019 through June 30, 2022. (Tr. at 27, Finding No. 7)

**Plaintiff's Challenges to Commissioner's Decision**

The Plaintiff argues that that ALJ's fourth step finding is contrary to law because no mental limitations were included in the RFC determination, and the ALJ failed to provide an explanation why they were omitted, thus frustrating meaningful judicial review. (ECF No. 5 at 3-10) In addition, the ALJ failed to account for the "total limiting effects" of the Plaintiff's impairments, as she did not properly consider the Plaintiff's self-described limitations under Section 404.1529, SSR 16-3p, and the Fourth Circuit's holding in Arakas v. SSA, 983 F.3d 83 (4th Cir. 2020). (Id. at 10-20) Because of these errors, the Plaintiff asks the Court to reverse and remand for further administrative proceedings. (Id. at 20)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's non-severe mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the RFC assessment, and how the evidence supported only mild limitations in all four broad areas of mental functioning; in sum, the ALJ's finding the Plaintiff's mild limitations did not preclude her from returning to her semi-skilled past relevant work was a reasonable conclusion. (ECF No. 6 at 8-15) The ALJ also considered the total limiting effects of the Plaintiff's impairments in compliance with the pertinent legal standards; the Plaintiff merely wants this Court to improperly reweigh the evidence to arrive at a different conclusion. (Id. at 15-18) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 18)

In her reply brief, the Plaintiff reiterates her arguments that the ALJ failed to account for

the mental limitations in the RFC without any further explanation as to why they were omitted and that the ALJ failed to appropriately evaluate her self-described limitations as required under Arakas and its progeny. (ECF No. 7)

**Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

Mental Impairments:

The record shows that the Plaintiff was diagnosed with anxiety and depression (*see, e.g.*, Tr. at 1048), however, she regularly denied having any related symptoms during mental status examinations (*see, e.g.*, Tr. at 363, 467, 499, 667, 702, 877, 1045, 1135). She treated conservatively for symptoms with therapy and medications such as Bupropion, which was to be taken only "as needed" (Tr. at 471, 1048; *see also* Tr. at 877 ("depression controlled")). The Plaintiff's family physician routinely noted that she had normal mental status examinations, including intact memory and recall, normal communication ability, and normal mood and affect (*see, e.g.*, Tr. at 500, 530, 536, 543; *see also* Tr. at 724 (noting normal intellectual functioning, following commands without difficulty, and intact recent and remote memory)).

Physical Impairments:

During the Plaintiff's March 2022 consultative examination, she reported that she has a

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

history of back pain over the past 10 years that has worsened over the last five years (Tr. at 722). She indicated that she received injections twice with no relief and was scheduled to meet with pain management at a later date (Id.). The record notes that she was born with a ventral/septal defect that required surgery as a child and has had A-Fib in 2012, 2016, and 2019, which was successfully converted (Tr. at 421, 722). Her treatment consisted of ablations, insertion of a loop recorder, and treatment with medications such as flecainide, Toprol, and Xarelto (Tr. at 672-673). There has been no recurrence of atrial fibrillation since her last ablation, and a normal ejection fraction was reported in October 2021 (Tr. at 722).

On physical examination in March 2022, the Plaintiff ambulated without the use of an assistive device, appeared comfortable in the sitting position, and had a normal cardiovascular exam with no evidence of peripheral vascular insufficiency (Tr. at 724). Examination of her spine revealed no tenderness or spasm, and although she had some decreased range of motion in the lumbar spine, she was able to stand on one leg alone (Tr. at 724-725). She also had normal muscle strength in the upper and lower extremities with normal sensation (Tr. at 725).

As for the Plaintiff's other impairments, she was prescribed hearing aids for hearing loss, but she said they did not help (Tr. at 377). During her consultative examination, however, the Plaintiff was not wearing hearing aids and was able to hear a tuning fork (Tr. at 380). Primary care records also indicate that the Plaintiff's hearing was intact to conversational voice in both ears (*see, e.g.*, Tr. at 492, 500). Other records indicate that the Plaintiff has been diagnosed with chronic pain and prescribed Gabapentin, which improved numbness in her lower extremities (Tr. at 1094). The Plaintiff also has a body mass index (BMI) of up to 39, indicative of obesity (*see, e.g.*, at Tr. 418).

9

<u>Prior Administrative Medical Findings and Opinion Evidence:</u>

On initial review, state agency mental health reviewer Timothy Saar, Ph.D., reviewed the record and determined that the Plaintiff had no limitations in all four areas of the "paragraph B" mental criteria, and thus had non-severe mental impairments (Tr. at 68). On reconsideration, John Todd, Ph.D., affirmed Dr. Saar's findings (Tr. at 81).

State agency medical reviewers found that, physically, the Plaintiff could perform light work, with additional postural and environmental limitations (Tr. at 70-74, 81-82).

**The Plaintiff's Function Reports:**

In her function reports submitted in February 2020 and October 2021, the Plaintiff reported that standing/waling too long caused weakness in her lower back and sitting causes low back and leg numbness (Tr. at 249, 254, 267). She also reported difficulty putting on her socks, underwear, and pants (Tr. at 250, 269). She stated she needed help getting in and out of the bathtub or hold onto something (Tr. at 250). Her ability to cook is limited due to her conditions and an inability to stand too long, lift, and bend (Tr. at 271). She stated it took her longer to do chores because of her conditions (Tr. at 250, 271). She can only drive or ride short distances due to her limited ability to sit (Tr. at 252, 272). Her ability to shop is limited due to her inability to bend, lift, and stand/walk too long (<u>Id</u>.). She reported only being able to lift 10 pounds or less, and she can only walk for about 10 minutes before needing to stop and rest (Tr. at 274).

**The Administrative Hearing:**

<u>Plaintiff's Testimony:</u>

The Plaintiff testified that she stopped working due to back problems, and that sitting or being on her feet too long caused numbness and tingling (Tr. at  40-41). She stated that she was

unable to get down on her knees due to pain and had difficulty hearing during meetings when someone was talking in a soft voice (Tr. at 41, 44). She said she had tried to wear hearing aids, but that they did not help her hear the correct words (Tr. at 45). Additionally, she testified that her family physician sent her to a therapist because her anxiety was feeling overwhelming (Tr. at 47). She also testified that she sees a cardiologist and an electrophysiologist once every six months for A-Fib and a loop recorder check, and a doctor about every three months for irritable bowel syndrome (Tr. at 50).

Vocational Expert's Testimony:

The vocational expert categorized the Plaintiff's past work as a benefits manager, and sedentary, skilled work (Tr. at 52). In response to the ALJ's hypothetical scenario including the aforementioned limitations in the controlling RFC, *supra*, the vocational expert testified that the hypothetical individual would be capable of performing the Plaintiff's past work (Tr. at 53). The ALJ then asked whether the hypothetical individual would be limited to sedentary work with the same limitations, and the vocational expert answered the individual could still perform the Plaintiff's past relevant work as customarily performed, but not as actually performed if she had to travel by car two or four hours (Tr. at 53-54).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

11

> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such

decision." Blalock, 483 F.2d at 775.

## Analysis

As an initial matter, the Plaintiff must show that she became disabled prior to the expiration

of her insured status on June 30, 2022. The DIB program provides for payment of disability

benefits to individuals who are "insured" by virtue of their contributions to the Social Security

trust fund through Social Security tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. To be

entitled to DIB in this case, the Plaintiff bears the burden of showing that she became disabled

prior to June 30, 2022, the date when her insured status expired for the purposes of DIB. See 42

U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the

medical requirements for disability only after her date last insured will not be entitled to DIB

benefits. 20 C.F.R. § 404.131(a). See also Jenkins v. Astrue, No. 3:10-cv-705, 2012 WL 3776370,

at *3 n.6 (E.D. Va. Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990))

(explaining that a worsened condition or a new impairment arising after the date last insured cannot be a basis for remand or an award of disability benefits). Therefore, the relevant period for purposes of DIB is from September 16, 2019, the date of the Plaintiff's alleged disability onset, to June 30, 2022 when her insured status expired (Tr. at 17-18, 19, 27).

<u>Mental Limitations and the RFC Assessment:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See <u>Id</u>. § 404.1546(c); see also <u>Id</u>. § 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. <u>Id</u>. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff's mental impairments were non-severe, and that she had mild limitations in all four areas of mental functioning.[3] (Tr. at 20-21) Notwithstanding the Plaintiff's contention that the ALJ failed to incorporate these limitations into the RFC assessment, this District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v.*

---

[3] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b) provides that a "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."

*Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4ᵗʰ Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021); see also, *Perry v. Colvin*, No. 2:15-cv-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations . . ."); Britt v. Saul, 860 Fed.Appx. 256, 262 (4ᵗʰ Cir. 2021) ("While the administrative law judge did not specifically address [the plaintiff's non-severe impairments] in the residual-functional-capacity analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments.") (*emphasis* in original).

In this case, the ALJ clearly addressed the Plaintiff's non-severe mental impairments when assessing her RFC, though she addressed the relevant evidence at step two in her analysis:

> In order to determine the claimant's residual functional capacity, the undersigned has considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are nonsevere[]. *The*

14

> *evidence does not support a finding of any additional functional limitations other than those included in the residual functional finding herein.*

(Tr. at 20)(*emphasis* added) The ALJ then reviewed the evidence as it related to the Plaintiff's generalized anxiety disorder and depression, specifically noting that the Plaintiff denied having symptoms during mental status examinations (Tr. at 20, 467, 499, 667)[4] The ALJ also noted that the Plaintiff was treated conservatively for these symptoms with medication, "such as Bupropion, which was to use as needed." (Tr. at 20, 471)[5] The ALJ then determined that the Plaintiff had mild limitations in all four broad areas of mental functioning, primarily relying on the information provided by the Plaintiff in her Adult Function Reports, in addition to evidence gleaned from her treatment records and the findings provided by the consultative examiner (Tr. at 20-21, 269, 271, 273, 274, 500, 724, 834)[6] Under the RFC analysis, the ALJ found the State agency mental consultants' assessments persuasive, as both found the Plaintiff had no severe mental impairments which the ALJ deemed consistent with the evidence of record (Tr. at 26).

The undersigned recognizes the Plaintiff's argument that this case presents the same defects as those presented in other cases before this Court, such as: *Shank v. Saul*, 3:20-cv-00444, 2021 WL 2467063 (S.D.W. Va. Jun. 11, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2021 WL 2744550 (S.D.W. Va. Jul. 1, 2021)(Chambers, J.); *Jones v. Kijakazi*, No. 5:21-cv-00634,

---

[4] The records referenced by the ALJ included: a record dated July 20, 2021 from Robby Keith, M.D., during a follow up appointment for treatment of obstructive sleep apnea and A-Fib; a treatment note from the Plaintiff's primary care physician, Michael S. DeWitt, D.O., dated June 7, 2019; and a treatment note dated February 9, 2021 from George K. Joseph, M.D., of Huntington Internal Medicine Group.

[5] The ALJ referenced a record from Matthew Walker, M.D., of West Virginia OrthoNeuro, dated July 29, 2021.

[6] In addition to the Function Reports, the ALJ referenced the Plaintiff's statements during the consultative examination in March 2022, and during an initial evaluation for physical therapy on May 24, 2022.

(S.D.W. Va. Sept. 22, 2022)(Eifert, M.J.), *report and recommendation adopted*, (S.D.W. Va. Nov. 28, 2022)(Volk, J.); *Karen W. v. Kijakazi*, No. 2:23-cv-00044, 2023 WL 6289991 (S.D.W. Va. Jul. 31, 2023), *report and recommendation adopted*, 2023 WL 6282856 (S.D.W. Va. Sep. 26, 2023)(Johnston, C.J.); *Brenda H. v. O'Malley*, 2024 WL 561185 (S.D.W. Va. Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 559602 (S.D.W. Va. Feb. 12, 2024)(Berger, J.); and *Mary S. v. Kijakazi*, No. 2:23-cv-00302, 2023 WL 9007315 (S.D.W. Va. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 9004929 (S.D.W. Va. Dec. 28, 2023)(Johnston, C. J.). (See ECF No. 5 at 5-10) Following a thorough review, the undersigned finds this case distinguishable from the aforementioned recent decisions in which this Court found the ALJ's lack of explanation to exclude mental functional limitations in the RFC warranted remand. Unlike this matter, the adjudicators in the preceding cases did not express that the prior administrative findings informed the RFC analyses – in some cases, like the one at bar, the adjudicators found the claimants more limited than the state agency experts assessed. However, *in this case*, the ALJ explained why the greater limitations did not translate into any RFC restrictions: as noted *supra*, the ALJ clearly stated that the evidence concerning the functional limitations resulting from the Plaintiff's non-severe impairments "does not support a finding of *any additional* functional limitations other than those included in the residual functional finding herein." (Tr. at 20)(*emphasis* added) Moreover, in this case, in the RFC assessment, the ALJ expressly considered the Plaintiff's non-severe mental impairments, as well as their resulting mild limitations in functioning: this included an evaluation of the state agency consultants' mental health assessments, in which the ALJ reiterated that while the record noted diagnoses of anxiety and depression at times, the Plaintiff also denied having symptoms of either impairment during mental status examinations.

(Tr. at 26) The ALJ summarized her conclusions, noting that the Plaintiff's RFC "is fully supported when considering the claimant's testimony and written statements in conjunction with the clinical facts, medi[c]al findings and opinions of the treating, examining and non-examining physicians." (Id.)

In sum, the undersigned **FINDS** that the ALJ supported her conclusions that the Plaintiff's non-severe mental impairments required no corresponding RFC limitations, and discharged her duties under Section 404.1545(a) and SSR 96-8p; she not only discussed all the relevant evidence as it related to the Plaintiff's mild limitations, but she also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).[7]

Evaluating Subjective Symptoms:

To the extent the Plaintiff argues the RFC assessment is flawed because the ALJ did not adopt the Plaintiff's self-described greater restrictions, as mentioned *supra*, the Fourth Circuit has long recognized that the RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." See Felton-Miller, 459 Fed.Appx. at 230-231; see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3,

---

[7] This Court had reached the same conclusions in other cases before it where the issue of non-severe mental impairments were addressed in the RFC analysis. See *Kevin R. v. Kijakazi*, No. 2:22-cv-00351, 2023 WL 5282400 (S.D. W. Va. July 31, 2023)(Tinsley, M.J.), *report and recommendation adopted*, No. 2:22-cv-00351, 2023 WL 5279652 (S.D. W. Va. Aug. 16, 2023)(Berger, J.); *Laura S. v. Kijakazi*, No. 2:22-cv-00272, 2023 WL 6144853, at *8 (S.D. W. Va. Aug. 31, 2023)(Tinsley, M.J.), *report and recommendation adopted*, No. 2:22-cv-00272, 2023 WL 6142362 (S.D. W. Va. Sept. 20, 2023)(Copenhaver, J.); *Mary M. v. Kijakazi*, No. 2:23-cv-00444, 2023 WL 8243772 (S.D.W. Va. Nov. 2, 2023), *report and recommendation adopted*, 2023 WL 8241553 (S.D.W. Va. Nov. 28, 2023)(Copenhaver, J.); and *Peggy C. v. O'Malley*, No. 3:23-cv-00120, 2024 WL 542401 (S.D.W. Va. Jan. 25, 2024)(Eifert, M.J.), *report and recommendation adopted*, 2024 WL 532324 (S.D.W. Va. Feb. 9, 2024)(Chambers, J.).

2017)(Eifert, M.J.), *report and recommendation adopted by*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017)(Johnston, J.); <u>Jackson v. Comm'r, Social Sec.</u>, 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014)("an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment."); <u>Chapo v. Astrue</u>, 682 F.3d 1285, 1288 (10th Cir. 2012)("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); <u>Sullivan v. Comm'r of Soc. Sec.</u>, 2014 WL 6685075, at *4 (E.D. Cal. Nov. 25, 2014)("It is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source."); <u>Gilmore v. Kijakazi</u>, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly matched Plaintiff's *testimony* or the opinion evidence."), *report and recommendation adopted by*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022)(*emphasis* added). Instead, an ALJ must consider all relevant evidence in the record and craft an RFC that is supported by substantial evidence. 20 C.F.R. § 404.1545(a)(1).

In this case, there are no opinions in the record that support a finding of greater restrictions that those found by the ALJ. Significantly, at the initial level of review, the state agency medical consultant determined that the Plaintiff's light RFC did not prevent her from performing her past relevant work (Tr. at 75); this opinion was affirmed on the reconsideration level of review (Tr. at 83).

Nevertheless, as noted above, the Plaintiff contends that the ALJ improperly emphasized the objective findings to discount her self-described symptoms, which is verboten under 20 C.F.R. § 404.1529, SSR 16-3p, and the Fourth Circuit's holding in <u>Arakas</u>. Indeed, the undersigned notes

18

that SSR 16-3p clarifies the evaluation of symptoms, including pain: Section 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms.
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

The undersigned further recognizes that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). "[T]here is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

As noted by the Plaintiff, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r,

Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Court "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In assessing the Plaintiff's RFC, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p." (Tr. at 23) Further, having recognized the two-step process in evaluating the Plaintiff's pain or other symptoms, the ALJ noted that should the Plaintiff's pain or other symptoms not be substantiated by the objective medical evidence, the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (Tr. at 24) The ALJ then considered the following regarding the Plaintiff's physical impairments:

> The claimant alleged an inability to work due to conditions such as A-Fib, back problems, degenerative disc disease, and hearing loss (Exhibit 2E, p. 2).[8] At the hearing, she stated that she has not worked since September 2019. She stated that she stopped working due to back problems. She stated that she was seated most of the day, but had numbness and tingling in her legs. She also stated that she was unable to get down on her knees due to pain, and had difficulty hearing during meetings when someone was talking in a soft voice. The claimant testified that she tried to wear hearing ais. However, she stated that they did not help her hear the correct words. She also testified that she sees a cardiologist and an electrophysiologist once every six months for A-Fib and a loop recorder check.

(Id.) The ALJ next proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id.)

The ALJ then referred to the medical record, discussed *supra*, and acknowledged that the Plaintiff alleged being unable to work "primarily due to back pain, her treatment has been conservative overall." (Tr. at 25) Of importance here is that the ALJ made several observations that support this finding, especially from the consultative examination in March 2022: the Plaintiff's spine revealed no tenderness or spasm, though she had decreased range of motion in the lumbar spine; she was also able to stand on one leg alone; and had normal muscle strength in both her upper and lower extremities with normal sensation (Tr. at 24-25, 725); the Plaintiff ambulated without the use of an assistive device, and appeared comfortable in the sitting position (Id.); and even records from The Spine and Nerve Center, Inc. documented that although the Plaintiff had

---

[8] The ALJ cited the Plaintiff's application for benefits submitted in January 2020.

been diagnosed with chronic pain, she was prescribed Gabapentin "which reportedly improved numbness in her lower extremities"[9] (Tr. at 25, 1094).[10]

In addition to finding that the objective medical evidence did not reasonably support the Plaintiff's disabling allegations concerning her chronic pain and back issues, the ALJ made other notable observations from the Plaintiff's consultative examination from September 2020 which showed that she did not wear her hearing aids at the time, but was able to hear a tuning fork (Tr. at 25, 380). During the consultative examination from March 2022, the Plaintiff's hearing was intact to conversational voice (Tr. at 25, 724). Regarding the Plaintiff's A-Fib, it had been successfully converted with no recurrence of A-Fib since her last ablation (Tr. at 23, 25, 421), and normal ejection fraction since October 2021 (Tr. at 25, 573).[11] Moreover, as noted earlier herein, the ALJ also considered the evidence regarding the Plaintiff's alleged mental impairments beyond step two in the sequential evaluation process. Thus, on the whole, the ALJ did consider the combined, or total limiting effects of all the Plaintiff's impairments, severe and non-severe alike, and determined they did not preclude her from performing her past relevant work during the period under review.

Regarding the Plaintiff's argument that her work history is a "credibility enhancing factor" in the symptom evaluation analysis, and that the ALJ erred by failing to consider her "historical willingness to work" (ECF No. 5 at 18-19), it is clear from the written decision the ALJ considered

[9] See also, Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

[10] This record is dated July 1, 2022, the day after the Plaintiff's DLI.
[11] See footnote 9, *supra*.

her work history, pursuant to Section 404.1529(c)(3): the ALJ's first finding concerned the Plaintiff's insured status requirements and DLI (Tr. at 19, Finding No. 1); and at the fourth step, the ALJ noted the Plaintiff's past relevant work included work as a benefits manager (Tr. at 26). The Plaintiff does not explain how this evidence would have changed the outcome of the ALJ's decision had she discussed her past relevant work further. However, it is notable that the ALJ did consider the state agency medical opinions, *supra*, both of whom found the Plaintiff had no functional deficits that warranted preclusion from all work, let alone her past relevant work (Id.).

The aforementioned demonstrates that the ALJ did not cherrypick only the evidence from the record to support a finding of nondisability; moreover, the ALJ's analysis demonstrates that she  did not improperly increase the Plaintiff's burden of proof that has been long considered verboten under Fourth Circuit jurisprudence, *supra*. There is no dispute that the Plaintiff is entitled to rely upon on her subjective complaints exclusively to prove her symptoms prevent her from working, however, this does not mean that the ALJ must accept her statements to the exclusion of the objective or other evidence of record – especially when there are inconsistencies with the overall record of evidence. See 20 C.F.R. § 404.1529(4). As noted by the ALJ in her written decision, she is obligated to consider the Plaintiff's alleged functional limitations, but only to the extent that they "can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.

Accordingly, the undersigned **FINDS** that the ALJ considered the total limiting effects of the Plaintiff's impairments in compliance with the pertinent legal standards. The undersigned further **FINDS** that the resulting physical RFC assessment is supported by substantial evidence, and not the product of a misinterpretation or misrepresentation of the facts, or reliance upon the

objective evidence to the exclusion of the Plaintiff's self-described limitations. See, e.g., *Laura C. v. O'Malley*, No. 5:23-cv-00124, 2024 WL 1164865 (S.D.W. Va. Mar. 1, 2024)(Tinsley, M.J.), *report and recommendation adopted*, 2024 WL 1160311 (S.D.W. Va. Mar. 18, 2024)(Volk, J.).

Finally, the undersigned **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

## **Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for an award of benefits or remand (ECF No. 5), **GRANT** the Defendant's request to affirm the decision (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 10, 2024.



Omar J. Aboulhosn
United States Magistrate Judge